CITY OF BURLINGTON and another, Appellants, vs. INDUS-
TRIAL COMMISSION OF WISCONSIN and others, Re-
spondents.

*March 10—April 3, 1928.*

*Workmen's compensation: Volunteer fireman of city: Power of city
to furnish fire protection to adjacent territory: Fireman in-
jured while on duty outside of city.*

Cities have, by their general charters, power to contract and to
furnish fire service to people and communities adjacent to the
cities, and at least within their trading areas; and a volunteer
fireman who was injured on his return from a fire outside the
city limits and who acted under the direction of the city fire
chief pursuant to a plan adopted by the council for furnishing
fire protection outside of the city limits, is entitled to compen-
sation under the workmen's compensation act.

APPEAL from a judgment of the circuit court for Dane
county: A. G. ZIMMERMAN, Circuit Judge. *Affirmed.*

This is an appeal by the plaintiffs from a judgment affirm-
ing an award of the *Industrial Commission.*

For the appellants there were briefs by *Olin & Butler* of
Madison, and oral argument by *B. H. Stebbins.*

For the respondents *Industrial Commission* and *Pieters*
there was a brief by *Foley, Brach & Colbert* of Racine,
the *Attorney General,* and *Mortimer Levitan,* assistant at-
torney general, and oral argument by *Mr. J. J. Foley* and
*Mr. Levitan.*

CROWNHART, J. The facts are not in dispute. The de-
fendant *Pieters* was an automobile salesman earning $40 a
week and residing in *Burlington.* For a number of years he
had been, and was at the time of his injury, a member of the
volunteer fire department of the city. The members of the
department responded to calls. The chief and one or two
others were the only regular employees. The volunteer fire-

men received no regular pay, but they received an average of about $12 a year.

In May, 1925, *Pieters* received a telephone call at his home, notifying him of a fire, and he immediately reported to the fire station, and by direction of the fire chief got on the fire truck, which proceeded to the fire. *Pieters* did not know where the fire was at the time. It appears that the fire was at a farm home about a mile outside the city limits. On the return from the fire and after the truck had entered the city limits, the ladder on the truck to which he was holding became unfastened and *Pieters* fell off the truck and was seriously injured. For a long time prior to the day he was injured, *Pieters* and other firemen had been accustomed to attend fires outside the city, when directed by the chief of the department, to the knowledge of the city authorities.

He made application to the *Industrial Commission* for compensation and was awarded compensation accordingly. The city and its insurance carrier brought an action in the circuit court to have the award vacated, on the ground that *Pieters,* at the time of the accident, was not in the employ of the city. The circuit court affirmed the award of the *Industrial Commission,* and from its judgment the plaintiffs appeal to this court, assigning as error the same proposition as assigned in the circuit court,—that *Pieters* was not at the time of the accident an employee of the city.

The theory of the appellants is that the city of *Burlington* had no power to employ *Pieters* to assist in furnishing fire-department service outside its limits. They contend that the city had no power except that expressly conferred or that which is necessarily implied from the power conferred, citing *Superior v. Roemer,* 154 Wis. 345, 356, 141 N. W. 250; *Flannagan v. Buxton,* 145 Wis. 81, 82, 129 N. W. 642; *First Wis. Nat. Bank v. Catawba,* 183 Wis. 220, 224, 197 N. W. 1013.

Prior to 1921 the powers of cities were expressed in their special charters or in the general city charter law by particular grants. In 1921 the legislature revised the city charter law as to every city in the state with the exception of the city of Milwaukee, which was in a class by itself. By such revision all special city charters were abolished and all cities were placed under the general charter law. As amended, the general charter law no longer enumerated the powers of cities, but gave a general grant of all powers permissible under the constitution, except as was specifically otherwise provided by the legislature. By sec. 62.04, Stats., it was provided:

"It is declared to be the intention of the revision of the city charter law, to grant all the privileges, rights and powers, to cities which they heretofore had unless the contrary is patent from the revision. For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that sections 62.01 to 62.26, inclusive, shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof."

By sub. (5), sec. 62.11, Stats., common councils were given the following powers:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

From such charter amendments it seems entirely clear that the city of *Burlington* was acting within its powers to promote its general welfare, peace, good order, and prosperity,

and its common council was acting within its powers, in providing for fire service to adjacent farmers and citizens outside the city limits, under the clause "for its commercial benefit" and in protecting its safety and welfare.

This construction was recognized by the legislature of 1925, ch. 70, by giving towns the power to contract with cities for fire service. The legislature did not deem it necessary to give cities the reciprocal power to contract with towns to furnish the fire service, for it considered that they already had that power by virtue of the amended charters. The common council of the city had expressly recognized this power prior to the fire. The board of police and fire commissioners had made a written report to the council, laying before the council a plan of furnishing fire protection outside the city limits, and the council had adopted such plan.

The decisions of this court prior to the amendments of 1921, as to the point in question, are inapplicable at the present time.

While we might well affirm the judgment of the lower court on the ground that *Pieters* was properly in the employ of the city at the time of the injury, we prefer to place the decision on the broad ground that cities, by their general charters, have the power to contract and to furnish fire service to people and communities adjacent to the cities and at least within their trading areas. It would be contrary to public policy to place upon firemen and policemen the duty to determine for themselves the powers of a city in every instance and thereby require them to disobey their chiefs. The emergencies of such departments require strict discipline and obedience on the part of employees to orders of superior officers. Policemen and firemen, when following the directions of their officers in the apparent line of duty, should have the protection of the law.

*By the Court.*—The judgment of the circuit court is affirmed.