Belknap,
May 4, 1931.

CHARLES A. VANDELL *v.* MILO T. SANDERS.

*Tilton & Tilton* and *Fortunat E. Normandin* (*Mr. Normandin* orally), for the plaintiff.

*Stanton Owen* and *Thomas P. Cheney* (*Mr. Owen* orally), for the defendant.

BRANCH, J.   There was evidence from which the following facts might be found.   The defendant was a captain in the fire department in the city of Laconia and the plaintiff was a member of his company subject to call in case of fire.   On the night of March 24, 1928, shortly before midnight, both parties responded to an alarm of fire.   While proceeding to the scene of the trouble in his own private automobile, the defendant overtook the plaintiff and invited him to ride.   The plaintiff accordingly stepped onto the left hand running board of the machine and reaching across the body of the car held onto the doors on the opposite side.   In this position he rode in safety almost to the scene of the fire.   At the last intersection of streets which it was necessary to traverse, the defendant slowed down and the plaintiff shifted his position in order to ascertain the exact location of the fire, so that he then stood on the running board holding onto the two doors on the left hand side of the car.   The defendant then proceeded a short dis-

tance at a speed of from thirty to thirty-five miles per hour, and made a sharp turn to the right as result of which plaintiff was thrown to the ground and injured.

The motions for a nonsuit and a directed verdict were properly denied. If plaintiff's account of the accident were accepted as true, the jury might properly find that the defendant, knowing of the plaintiff's exposed position, operated the automobile without due regard for his safety. It was not negligence, as a matter of law, for the plaintiff to ride on the running board. *Piateck* v. *Swindell*, 84 N. H. 402. The doctrine of assumed risk was not available as a defence. *Kambour* v. *Railroad*, 77 N. H. 33.

In charging the jury, the court called attention to the provisions of the Laws of 1927, *c.* 76, *s.* 2, which fix speed limits of 20 miles an hour on any highway in a business district where the traffic is controlled by traffic officers or signals; 15 miles an hour on all other highways in a business district, and 35 miles an hour under all other conditions not mentioned in the act. The question "under which provision of the statute the facts bring this case" was submitted to the jury and they were told that if the defendant was driving his car at a rate of speed which was unlawful within the meaning of the statute, and this violation of the statute caused the accident, he would be liable "on that account." The charge then continued as follows: "The fact that the defendant was a member of the fire department gave him no right to drive faster than the rate allowed by law. Although, under some circumstances, fire department or fire patrol vehicles may exceed the speed stated in the statutes, the defendant's car was not a part of the fire apparatus of the city, and he had no greater rights as to speed than any other individual."

The defendant clearly indicated his extreme dissatisfaction with the foregoing portion of the charge by no less than five exceptions which sufficiently raise the question whether the statutory speed limits apply to one in the defendant's situation.

The defendant claims the protection of the last paragraph of the section above referred to (Laws of 1927, *c.* 76, *s.* 2) which reads as follows: "The speed limitations set forth herein shall not apply to vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall not however protect the driver of any

such vehicle from the consequences of a reckless disregard of the safety of others."

The plaintiff contends that so far as the Laconia fire department is concerned this paragraph creates an exemption only with reference to fire apparatus belonging to the city, and this interpretation of the act was adopted by the court in the charge.

Under the law, as it existed prior to 1927, such a charge might have been defended. The statute then provided as follows: "The provisions of this section [relating to speed] shall not apply to motor vehicles of a fire department, motor police patrols or motor ambulances, when in the emergency service of their respective departments." P. L., c. 103, s. 18. If the effect of this provision was limited to municipally owned motor vehicles of fire and police departments it seems clear that the act of 1927 was intended to enlarge the scope of the exemption. The obvious general purpose of section 2 of this act was to liberalize the speed regulations of the state, and the language of this section leaves no room for the contention that the exemption in question applies only to municipally owned vehicles. Private ambulances are specifically mentioned, and private cars, when commandeered for use by the police, are obviously included. The phraseology of the act with reference to fire departments differs materially from that of the preceding statute and it cannot be assumed that the change was aimlessly made. Notice must be taken of the fact that "fire department or fire patrol vehicles" is a more inclusive phrase than "motor vehicles of a fire department." With reference to "fire patrol vehicles," the court has no knowledge that they are not or may not be privately owned. See P. L., c. 191, ss. 18, 42, 45, 46. The policy which exempts private cars from the statutory limitations on speed when used for police purposes equally demands that the same freedom of movement be accorded to private cars when used for the purpose of conveying firemen to a fire. The same legislative purpose to facilitate the early arrival of firemen and fire apparatus at the scene of a fire, which finds expression in the requirement that other highway travelers shall give them the right of way (P. L., c. 146, s. 12), is apparent in the provision now under consideration. The language of the exemption should be construed in such a way as to further the purposes and policy of the act.

The plaintiff advances the following argument: "Fire department or fire patrol vehicles in practically every case, have some distinguishing mark, so that persons in the vicinity will know that they are such vehicles and to give them the proper right of way. Vehicles such as

the defendant's car have no distinguishing mark and persons on the streets have no way of telling that they are headed for a fire and that they contain firemen. Therefore, it would be dangerous to allow them to come within the provisions of the statute . . .".

This argument is entitled to little weight. There is nothing in the statute to indicate that these considerations, so far as they have a basis in fact, were regarded by the legislature as material. Even if the court were to take judicial notice of the fact that fire apparatus usually bears "some distinguishing mark," it is plain that the terms of the statute embrace other vehicles which are not thus identified, namely, commandeered cars and private ambulances. Nor do we know of any ground for an assumption that "fire patrol vehicles" bear any conspicuous insignia of their function.

Counsel for the defendant in their brief propound the following question: "Can it be that under the law the fire apparatus and its driver can go to the fire at fifty miles or more per hour with impunity, and then must wait until the members of the department, and, in his case, a captain of one of the companies, can arrive at ten miles per hour, or at whatever speed may be deemed reasonable under the speed laws applicable to ordinary travelers?" Only language of unmistakable significance could compel an affirmative answer to this question. Such language was not used in the act of 1927. The words "fire department . . . vehicles when traveling in response to a fire alarm" are broad enough to include private cars while in use for the transportation of firemen to fires, and we think they should be so construed.

Since the charge of the court embodied an interpretation of the statute inconsistent with the views herein expressed, the defendant's exceptions thereto must be sustained.

The other exceptions taken by the defendant have not been argued and are understood to be waived.

*New trial.*

All concurred.