GEORGE McCARTHY *vs.* WILLIAM S. MASON.

GRACE McCARTHY *vs.* WILLIAM S. MASON.

Penobscot.      Opinion, January 31, 1934.

*E. P. Murray,*
*Milton R. Geary,* for plaintiffs.
*William S. Cole,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.   On motions. Actions of tort brought severally by the husband and wife against the defendant as a consequence of a collision between the car in which both of the plaintiffs were riding and the car driven by the defendant. The cases tried together resulted in verdicts for both plaintiffs.

Some of the facts attending the accident are not in dispute, namely: That it happened about noon of a pleasant day, November 4, 1932, in Bangor, but outside the city limits, at a point

where the Odlin Road from the south enters State Route 2, the trunk line leading westerly from Bangor through Hermon and Newport to Augusta and Portland. It was a two lane cement road with ordinary gravelled shoulders on each side. From the point of collision easterly toward Bangor for a distance of at least a quarter of a mile the road is straight and vision unobstructed. Westerly for some hundreds of feet the road is visible.

The plaintiffs were returning home from Bangor in a Studebaker touring car owned and operated by the wife, Mrs. McCarthy, her husband sitting on her right in the front seat. They "were going to turn down into the Odlin Road." Before so doing, however, and before reaching the Odlin Road, a fire truck overtook and passed the plaintiffs and presently, upon reaching the Odlin Road, another fire truck passed them, followed by a coupe about one hundred feet behind the second piece of fire apparatus. The plaintiffs' car was "turned to go into the Odlin Road" and when at a point at the entrance of this road, when either the whole of the automobile was off the cement or the front wheels only, the defendant's car ran into the left side of their car and caused it to make "two or three jumps sideways and up against a large telephone pole," about forty feet distant.

It is not denied that at the time the defendant was Fire Chief of the City of Bangor; that the two pieces of fire apparatus above mentioned had been sent out in response to a call on account of a fire not in Bangor but in Hermon, an adjoining town; that the defendant, having learned that they were proceeding with wrong information as to the location of the fire, was attempting to overtake said fire apparatus and direct it aright. For said purpose, the defendant was operating the car himself, unaccompanied, it being a red coupe known as "the Chief's car."

The basis of any right of recovery by the plaintiffs in these cases is negligence. Could they recover, it would be because of sufficient legal proof of negligence of the defendant as the proximate cause of the collision and lack of contributory negligence by them thereto. Negligence, many times defined, lately by our Court, is said "to be the want of ordinary care, that is, the want of such care as a reasonably prudent and careful man, mindful of his own conduct and the rights and safety of others, would exercise in a similar situ-

ation, or under like circumstances. The terms 'ordinary care' and 'reasonable prudence,' as applied to the actions and affairs of men, have only a relative significance, depending upon the incidents and surroundings of the particular case. They defy arbitrary definition. What might be reasonable care under one condition of things might be negligence under another. In other words, the care which ordinarily prudent and careful persons take is commensurate with the necessity for care and the dangers of the situation." *Gravel* v. *LeBlanc*, 131 Me., 325, 328, 162 A., 789, 790.

## Defendant's Negligence

The facts in this case warrant, if they do not compel, a discussion of the law with relation to what constitutes due care upon the part of the driver of fire apparatus in response to an alarm. No case in Maine, thus far, has dealt with this subject.

That the defendant was acting in his capacity as Fire Chief is unquestioned. It is stated, however, that he had no right so to act in this instance because the fire was not in Bangor, and it is particularly claimed that Section 13 of Chapter 29, R. S. 1930, is inapplicable, which statute provides: "Police, fire department, traffic emergency repair vehicles, and ambulances, when operated in response to calls, shall have the right of way; and on the approach of any such vehicle the driver of every other vehicle shall immediately draw his vehicle as near as practicable to the right hand curb and parallel thereto and bring it to a standstill until such public service vehicles have passed."

The statute itself in no way qualifies the words "when operated in response to calls." It specifies calls neither from within nor from without. Only one case have we found that seems to bear on this issue. In *Hubert* v. *Granzow et al.*, 155 N. W., 204, a Minnesota case, the Court held that a fire apparatus of a city while on its way to a fire is excepted from the speed restrictions imposed by the Motor Vehicle Act, although the fire be outside the city limits, and said: "It is probably true that no legal duty is imposed upon a city fire department to assist in extinguishing fires outside the city; but it is a matter of common knowledge that such departments almost invariably respond when called upon in such cases. Actuated by motives of humanity rather than by the mandate of strict legal

duty, they seldom refuse to give their services to their neighbors in case of need. While the law may not impose a legal duty upon them to assist in extinguishing fires outside the city, it certainly does not forbid them from doing so."

We concur. We see no good reason why such rights possessed by a fire department while acting within its home jurisdiction in the performance of its important and necessary service should not obtain as well when reasonably engaged in that kind of service outside its home limits. The needs are the same, whether the call comes from within or without the city.

The language in our statute is general, not specific, and we do not feel called upon by reason or authority to limit its application to calls within the city.

It is also claimed, although not strenuously so, that the Fire Chief's car is not within the statute as a fire department vehicle. This contention can not be sustained. It is common knowledge that chiefs of fire departments do not ordinarily go to fires on fire trucks but in the Fire Chief's car. It is important that a Chief reach a fire as quickly as possible, exercising due care, however, in doing so, in order that he may direct the work to be accomplished by the use of the apparatus. The use of the Chief's car tends to make this possible. We can not believe that the Legislature intended to exclude a Fire Chief's car from the intendment of this statute. It stipulates "fire department vehicles" and makes no exception as to the Chief's car.

In a recent New Hampshire case, *Vandell* v. *Sanders*, 155 Atl., 193, the Court held that an act exempting "fire department vehicles travelling in response to fire alarm" from speed laws included private cars used for transporting firemen to fires.

We hold, then, that Section 13 of Chapter 29 aforesaid, is applicable to this case, that by reason of it the defendant had "the right of way" and that that was one of the facts to be considered by the jury as an element in determining whether or not, under all the attending circumstances, the defendant was then and there in the exercise of due care.

But although the defendant had the right of way, it did not give him a right to act other than in the exercise of due care under all the circumstances.

"A 'right of way' over the city streets does not do away with the requirement that reasonable care shall be exercised at all times. A 'right of way' is necessarily subject to the preservation of the safety of those who may be lawfully upon the street, and while the emergency in the case of fire apparatus undoubtedly justifies speed in driving to the scene of the disaster, such speed must be exerted with reasonable care and due regard to the lives and limbs of those who may be met upon the way." *Farrell* v. *Fire Insurance Salvage Corps*, 179 N. Y. Supp., 477, 481.

A driver of fire apparatus is "bound to exercise reasonable care, reasonable control, to be on the alert, on the lookout, and to be observant of the rights of others, who had the right to be upon the streets." *Idem*, page 479.

We come now to the consideration of a point, novel in Maine and undecided, as to whether or not the statutory provisions as to speed have application to fire apparatus when on the way to a fire.

Section 69, Chapter 29, R. S. 1930, provides: "Any person driving a vehicle on a way shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a way at such a speed as to endanger any person or property. . . . It shall be prima facie lawful for the driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful."

Then follow in this same section special provisions as to speed prima facie lawful, as (1) Fifteen miles an hour when passing a school during school recess or when children are going to and leaving school during the opening and closing hours; (2) Fifteen miles an hour when approaching within fifty feet and in traversing an obstructed intersection of ways; (3) Twenty-five miles an hour on a way in a business district or built-up portion controlled at intersections by traffic officers or stop and go signals; (4) Twenty miles an hour on all other ways in a business district or built-up portion as defined in the statute; (5) Twenty-five miles an hour in a residence district or built-up portion as defined in the statute and in public parks, unless a different speed is fixed by the municipal officers and approved by the State Highway Commission and duly

posted; (6) "Thirty-five miles an hour under all other conditions." This is followed by the provision that "it shall be prima facie unlawful for any person to exceed any of the foregoing speed limitations" with an exception not here pertinent.

If this statute be held to include speed of fire apparatus in going to a fire, the prima facie lawful speed in this case would be not in excess of thirty-five miles an hour and any speed in excess thereof would be prima facie unlawful.

Whether or not speed regulations apply to the operation of fire apparatus has been decided differently by the Courts outside of Maine. Some of the earlier cases, and occasionally a later case, have held that they did apply. The greater weight of the authority, however, is to the contrary.

In *Hubert* v. *Granzow et al*, 155 N. W., 204, the Minnesota Court said: "It is the general and perhaps universal rule that regulations governing the rate of speed upon public streets and highways do not apply to fire apparatus on the way to a fire."

In an exhaustive opinion, *Balthasar et al* v. *Pacific Electric Railway Company*, 187 Cal., 302, 202 P., 37, 19 A. L. R., page 452, the California Court held: "The provisions of the Motor Vehicle Law with respect to motor vehicles upon the streets and their course in turning corners do not apply to fire apparatus of a municipal corporation in going to a fire in which the municipality is exercising its governmental functions." Appended to this decision is an annotation containing a collection of cases in point. The annotator says, on page 460: "While the cases on this question are not numerous, a conflict of authority exists. In some cases the rule is sustained that statutes or ordinances regulating the speed of motor vehicles on the street are inapplicable to the police or fire apparatus while on active duty, notwithstanding the fact that the acts establishing the speed limit employ the words 'all vehicles,' 'any vehicle,' or 'any person.'" *Citing Balthasar* v. *Pacific Electric Railway Company*, supra; *Devine* v. *Chicago*, 172 Ill. App., 246; *Edberg* v. *Johnson* (Minn.), 184 N. W., 12; *Farrell* v. *Fire Ins. Salvage Corps*, supra, and other cases cited in a previous annotation in 9 A. L. R., 367.

"Apart from any express grant of privileges in these respects, it is usually considered that, by reason of the necessities of the sit-

uation and the public interest, and in the absence of a clear expression of legislative intent to the contrary, fire apparatus and other vehicles of a municipal fire department, whose function is the saving of life and property, are, when in use for such purpose, exempt from traffic regulations, such as those fixing speed limits and prescribing the mode of turning at intersections." 42 C. J., Section 765, page 1026. The author cites many cases, including *Balthasar* v. *Pacific Electric Railway Company*, supra. To the same effect is 13 R. C. L., Section 395, page 484.

"Statutes and ordinances frequently limit the speed at which vehicles may be driven along streets and highways, and such provisions are generally recognized as valid if reasonable. They have been held to apply to street cars and private ambulances, but, as a rule, do not apply to members of the fire department, or to members of a salvage corp organized under statutory authority while responding to an alarm of fire." 13 R. C. L., Section 235, pages 283 and 284.

West Virginia, in *Waddell* v. *City of Williamson*, 127 S. E., 396, holds likewise, and, in distinguishing between a speed employed by a driver of fire apparatus and that of other drivers, quotes from *Hanlon* v. *Milwaukee Electric Ry. & Light Co.*, 118 Wis., 210, 95 N. W., 100, as follows: "Among those things which distinguish the conduct of the driver of fire apparatus from others is, primarily, the duty and necessity of great speed. The loss of moments may mean destruction of lives or property. The public purpose which such men and appliances serve would be defeated by the hesitation and caution which does and should characterize the ordinary traveler. To serve this public purpose, the driver must and does seize every opportunity to make expedition. He takes chances, in deference to the imperative necessity for speed, which would be wholly unjustifiable otherwise. These things firemen do. These things they must do. The conclusion seems irresistible, either that they are consistent with ordinary care under those circumstances, or that the ordinarily prudent man can not hold a position in the fire department."

Other cases to the same effect might be cited were it necessary.

We are convinced that it was not the intention of the Legislature to have these speed laws apply to the driver of fire apparatus on

the way to a fire. To hold that the driver of a fire engine in going to a fire can not exceed some of the particular speeds as specified in our statute without being prima facie guilty of the commission of a crime is the attainment of an end, in our judgment, beyond that intended by the enactment of this statute. So to hold would have a very great tendency to slow up the activities and diminish the efficiency of a fire department and destroy in great measure its service necessary for the preservation of property and in many instances life itself.

Still, we must not be misunderstood. Carte blanche as to speed in the operation of fire apparatus is not given by this decision.

"The fact that a fire department vehicle is either expressly or impliedly exempt from the operation of traffic regulations does not relieve the operators of such vehicles from the general duty of exercising due care for the safety of others, and their own safety, even when answering emergency calls, although, in determining what is due care on the part of the operator of such a vehicle, his right to assume that others will recognize and respect his superior rights on the streets is an element to be taken into consideration." 42 C. J., Section 767, page 1027.

"While it has been held that firemen driving to a fire are not required to use the same care to avoid collision with other vehicles that is required of a driver of an ordinary private vehicle, the true rule would seem to be that the degree of care required in both cases is the same; that is, that a fireman as well as others must use ordinary care to prevent injury to himself and others, which means care commensurate with the circumstances but that the exigencies of a fire call may require a fireman to take risks, particularly as to speed of travel, which it would not be necessary for a traveller under ordinary conditions to take." 13 R. C. L., Section 224, pages 272 and 273.

Thus we return to our own definition of negligence already stated in the quotation from *Gravel* v. *LeBlanc*, supra, in which case our Court said with reference to due care: "What might be reasonable care under one condition of things might be negligence under another. In other words, the care which ordinarily careful and prudent persons take is commensurate with the necessity for care and the dangers of the situation."

So, then, in this case, the facts that there was a fire, and that the defendant as Fire Chief was acting in performance of a duty with relation to that fire, constituted an elemental part of the situation and were for the consideration of the jury.

The test as to due care is whether or not at that time and place, under all the circumstances as they existed then and there, he was operating his car as the ordinarily careful and prudent driver of such a car in the performance of such a duty would have done. If so, he was in the exercise of due care; otherwise, not.

The determination of the test to be applied is a matter of law. The application of it is for the jury and its verdict must stand, unless "on the whole record" there is "no weight of evidence adequate to satisfy the minds of reasonable men fairly tending to support the jury's finding." *Walker* v. *Norton*, 131 Me., 69, 70, 158 A., 926.

The jury determined that the defendant was negligent.

The plaintiffs contended that the defendant was driving with so much speed that he did not have his car under reasonable control and, as a consequence, negligently drove it against the plaintiff's car, although its operator was in the exercise of due care.

The evidence as to speed was conflicting. Neither plaintiff saw the defendant's car before the accident, nor testified as to observed speed. Both plaintiffs, however, testified that following the accident the defendant, in the police station, in answer to a question by the husband as to how fast he was driving, said "he had her wide open" and was driving "fifty or sixty" miles an hour. This the defendant denied and produced witnesses who gave negative testimony that they heard no such statement made by him.

The only direct testimony as to speed came from the plaintiff's witness, Hathaway, a disinterested and unbiased witness, as far as the evidence appears, and the defendant himself.

The witness, when asked as to speed, said: "I never figured any speed; I don't know. Just going the ordinary rate." The jury, no doubt, inferred that the witness meant that the defendant was driving at the ordinary rate of fire apparatus on the way to a fire. In this connection, it had the right to, and no doubt did, place significance upon the testimony of the defendant himself that, although he left Bangor "two minutes" after the other pieces of apparatus had

left, he was attempting to overtake them and had "caught up" with them to within a distance of nine hundred feet just before the accident. Hathaway, in speaking of the other apparatus which he saw go by, said "that it whizzed by." The jury was justified in believing that the defendant was driving at considerably greater speed than that employed by the other apparatus on the way to the fire. The witness also testified, "I saw this red car coming and I says 'if they don't look out there is going to be a collision' and before I could think of anything else there was the blow."

The defendant did not claim that he applied his brakes or diminished his speed at all as he approached the plaintiffs' car. The jury may well have thought that the defendant, realizing that he had the right of way, took too much for granted as to the probable operation of plaintiffs' car and so did not exercise that care that the ordinarily careful and prudent driver would then and there have exercised to prevent a collision, should the plaintiffs attempt to cross the highway. The defendant admitted that he saw the plaintiffs' car as it was proceeding ahead of him on this State road, and from the top of the hill easterly of the place of collision he had a straight, unobstructed road with a complete possibility of sight of the plaintiffs' car and its movements. The entrance to the Odlin Road he either knew of or could have seen. He was approaching an intersection of the State road and either did or should have seen that the plaintiffs' car had stopped or was slowing up at that place. Still, he kept on with undiminished speed.

The defendant claimed that he was driving from thirty-five to forty miles an hour and no faster. This either the jury did not believe or, if believed, deduced that with the exercise of due care he could have avoided the collision by application of his brakes or by passing to the rear of the plaintiffs' automobile.

On this conflicting testimony, we can not say that the jury in finding the defendant negligent was manifestly wrong.

### Contributory Negligence

The jury absolved the plaintiffs from contributory negligence. Can its finding in that regard be sustained? No.

In *Verrill* v. *Harrington*, 131 Me., 390, 395, 163 A., 266, 268, this Court said: "It is familiar law that the operator of a motor

vehicle intending to cross the street in front of a car coming from the opposite direction on its own right of way must give notice of the intention to cross in order to charge the driver of the other car with negligence in pursuing its course. The law charges the driver of a car making such a crossing with the duty of so watching and timing the movements of the other car as to reasonably insure himself of a safe passage, either in front or rear of such car, even to the extent of stopping and waiting if necessary. *Fernald* v. *French,* 121 Me., 4, 9, 115 A., 420; *Esponette* v. *Wiseman,* 130 Me., 297, 155 A., 650. No less strict rule can be applied to operators attempting to cross the right of way of cars coming from behind. Reasonable care must be exercised in ascertaining their presence in the passing lane. The precautions above stated must then be taken."

Before attempting to cross this State Highway and enter the Odlin Road, did the plaintiffs exercise due care to ascertain the presence and approach of the defendant's car? They say they had stopped on their own side but with their car quartering in toward Odlin Road. This is corroborated by their witness, Hathaway. They also say that before starting across they looked up and down the main road (the witness gives no testimony on this point) and did not see the defendant's car. Neither the witness nor the plaintiffs themselves testify that the plaintiffs gave any signal, by hand or otherwise, that they intended to drive across. What was their situation? Two pieces of fire apparatus had just passed them at great speed and they knew, no doubt, there was a fire. As these pieces of apparatus were leaving them, they heard a siren, although they claim they thought that siren was on the fire apparatus that had passed by. Their witness, however, testified that that siren then heard kept coming nearer and nearer.

"Q. And when you saw her car stopped there did you at that time hear the siren on the fire chief's car?

"A. Yes, sir, in the distance.

"Q. When you next looked, what did you see?

"A. I saw her car right about here (indicating).

"Q. Meaning the McCarthy car?

"A. Yes, sir, and I saw this red car right about here (indicating) and in the snap of a finger I heard the blow. . . .

"Q. Did you at that time hear the siren on the fire chief's car?

"A. It kept coming nearer. Yes, sir.

"Q. And it was blowing continuously, wasn't it?

"A. Why, I should say the same as they always blow it."

This was a much travelled road, a trunk line between Bangor and Portland. Besides its ordinary traffic, to the knowledge of the plaintiffs, fire apparatus was on its way to a fire. Nevertheless, without giving notice, of their intention so to do, the plaintiffs started across this road.

But they both say that before so doing they looked up and down the road towards Hermon and back toward Bangor and saw no approaching vehicle. Towards Bangor, from which direction the defendant was coming, they could have seen thirteen hundred feet, with absolutely nothing to obstruct their view. Before wholly across, they were hit. Easily mathematically demonstrable it is that the defendant's car must have been clearly in view when the plaintiffs started to cross the road in front of it, being driven, as they now say, at a terrific rate of speed. If they had looked back just as they started to go across, they would have seen it. If they had seen it and started across, they would have been negligent; if they had looked to see and did not see it, they would have been equally negligent.

This statement of the Court in *Hartnett* v. *Standard Furniture Co.*, 299 Pac., 408, 413, is here pertinent. "We can not brush aside his testimony that he looked and failed to see a fire truck which could not have been more than a few seconds time distant from the intersection. Had he in fact looked, he would have seen." A driver "is chargeable with knowledge of objects in the highway which are in plain view." *Steele* v. *Fuller* (Vt.), 158 A., 666, 668.

Not only did they not give notice of their intention to cross this highway, but could not even have looked back to see if it were reasonably safe to proceed across, for it is preposterous to believe that had they actually looked back and had seen the defendant's car coming so near and so fast, that they would have deliberately driven in front of it. They failed utterly to exercise the due care required by the decision in *Verrill* v. *Harrington*, supra.

The presence of fire apparatus is always attractive and engaging and it may well be that the plaintiffs' minds were so much oc-

cupied with viewing the progress of the fire apparatus that had passed by them that they failed to sense their own situation and so gave no heed whatever to traffic from behind.

Although the husband was a passenger riding with his wife, yet this point is not stressed or even mentioned by counsel for him, no doubt because it sufficiently appears in the case that immediately before the accident he participated in the control and management of the car then operated by his wife.

In conclusion, we can not discover that there was "any weight of evidence adequate to satisfy the minds of reasonable men which fairly tends to support the jury's finding that the plaintiffs were in the exercise of due care." *Walker* v. *Norton*, supra.

*Motions Sustained.*
*Verdicts Set Aside.*
*New Trials Granted.*