## No. 16,216.

### CITY OF PUEBLO ET AL. *v.* FLANDERS.
(225 P. [2d] 832)

Decided October 30, 1950.

572

Mr. William L. Lloyd, Mr. Laurence E. Langdon, for plaintiffs in error.

Mr. Matt J. Kikel, Mr. John W. Elwell, Mr. Harold C. Rudolph, for defendant in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

This action was brought to enjoin the officers of the city of Pueblo from furnishing fire protection to property located outside the city limits, and the trial court granted a writ of injunction declaring that: "The maintenance and operation of a fire department by a municipality is exercising a governmental function and therefore has no extraterritorial powers; that the primary purpose of a municipal corporation is to contribute toward the welfare, health, happiness and public interest of the inhabitants of such corporation, not to further the interests of those residing outside its limits; that the welfare and public interests of the municipality and the taxpayers therein are being neither promoted or protected by permitting the city's fire department to answer calls for the extinguishment of fires in the territory and districts lying outside of the municipality's corporate limits; that the city council of Pueblo is without authority to take the city's fire equipment paid for by the taxpayers and

give it, or donate its use, to territory beyond the city limits." The writ commanded that the city commissioners "do absolutely refrain from and desist from the practice as heretofore followed by defendants of using the city's fire equipment and firemen for the purpose of the extinguishment of fires in territory and districts outside and beyond the corporate limits of said municipality."

In reviewing this judgment and writ, we are confronted with a question novel in this jurisdiction and, so far as our study discloses, without precedent elsewhere. In such a case it is particularly unfortunate that the questions involved are not explored in the briefs.

■ Courts should not grant the equitable remedy of injunction against other branches of government in the absence of convincing proof of threatened and impending wrongful action. "The injury which plaintiff seeks to prevent by injunction must be immediate and imminent." 64 C.J.S. 959, §2143.

In the record before us there is evidence of occasional response by the fire department to calls outside the city limits over a term of years; there is evidence also of action by the city council at various times prohibiting such response, and counsel for defendant in error Flanders, in their answer brief, state: "The city council has changed its opinion several times as to the advisability and expediency of sending Pueblo's fire-fighting equipment and firemen outside of the city limits. The present council was elected since the suit was brought and their opinion has not yet been expressed, but the question before the court is not whether the council acts wisely or foolishly but whether it has power to act at all in the premises." That admission refutes the allegation of the complaint that, "defendants are threatening and intending to furnish further and continued fire protection outside the city limits of the City of Pueblo," and leaves the question raised in this action one of idle speculation rather than of urgent concern. We think the

showing here insufficient to justify the drastic remedy of injunctive relief, but are not content to rest our decision on that ground alone.

Further, it is generally held that an action against corporate authorities for injunction may not be maintained by a taxpayer upon the ground alone of the illegality of their conduct, except in cases of great public concern, but only upon showing of substantial financial damage by reason of increased tax burden. As said by the Kansas court in *Robertson v. Kansas City*, 143 Kan. 726, 56 P. (2d) 1032: "While testimony was taken showing the various acts and contracts complained of, there was no showing in the evidence that plaintiffs would have their tax burdens increased. Their apprehension that such a result would follow depends on events which may or may not occur. * * * There was no showing appellants would sustain any special damages and different in kind from the public generally. * * * The question raised has been before this court many times, and it has been repeatedly held the only proper plaintiff in an action for injunctive relief against abuse of power by municipal officers is the state, or one of its officers charged with responsibility of scrutinizing the acts of public officers and boards."

In the record here, we find no showing that the issue raised is of such moment as to require interference by the court; no showing that protection of property within the city has been jeopardized, no showing that the city has incurred expense because of responding to fire calls outside the city limits, or that any such expense is contemplated. Even if we take notice of an unshown expense of operation of the truck used for such fires in going a few blocks or even a few miles outside the city limits, we think the rule de minimis would apply. In the words of the Illinois court, in *Ryan v. City of Chicago*, 369 Ill. 59, 15 N.E. (2d) 708, such petty expense is "too trifling to constitute an injury to a taxpayer." We think the record fails to justify interposition of a court of

equity, but we are not content to rest our decision on that ground alone.

The injunction here issued by the trial court does not concern contract obligations to supply fire protection to outside areas whereby the city might be obligated to send out its equipment in circumstances leaving its own area unprotected, but only the discretionary use of such equipment at such times as may be deemed advisable by the appropriate city officials.

It will be noted that the injunction here issued by the trial court contains no exception, and prohibits use of fire equipment or firemen outside the corporate limits even in the case of public buildings constructed from tax funds to which the people of Pueblo have contributed. It applies, regardless of the location, nature or threatened consequences of the fire, and regardless of whether its extinguishment might save the city itself from serious conflagration.

It appears from the court's opinion that the principal grounds for issuing the writ were: First, that the operation of a fire department is a governmental function and in its exercise the municipality has no extraterritorial powers; and, second, that the purpose of a municipal corporation is to promote the welfare and interests of its inhabitants, not of those residing outside its limits, and that the welfare and interests of the municipality and its inhabitants are not being promoted by the extinguishment of fires outside the corporate limits.

We do not challenge the rule that in exercising a governmental function a municipality generally has no extraterritorial powers, except as they may be delegated by the legislature, but the authority of permissive statute is essential, not because the city may otherwise not act outside its limits, but rather because it does not have the power to enforce its actions upon the people or property against which it acts in invitum, in the absence of statute. The question here before us does not concern the right to enforce a municipal power against properties or

citizens outside the city limits, but rather the right of city officials to volunteer service outside. The distinction, we think, is fundamental, and in cases involving actions of municipal authorities outside the city limits, it is important to distinguish which question may be involved: the power to enforce the authority of the municipality as against property or people outside its borders, or the right of municipal officers to act outside the city limits where no enforcement of authority is involved. The former right, if existing at all, is absolute; the latter is discretionary and dependent on purpose and result. The former, as raised in *People v. Raims*, 20 Colo. 489, 39 Pac. 341, is dependent on legislative delegation of authority; the latter is dependent on whether or not the use of the city's officers or facilities or funds is, or is not, for the benefit of the municipality. Admittedly the operation of a fire department within the city limits is a proper municipal activity. Its purpose is to benefit the city, and, where there is no conflict of rights, its relation to that purpose, rather than arbitrary city boundary lines, must determine the extent of its use.

As to the second ground, we cannot agree with the unsupported declaration of the trial court that the welfare and public interest of the municipality and the taxpayers therein are neither promoted nor protected by permitting the city's fire department to accept calls for the extinguishment of fire outside the municipality's corporate limits, even where public buildings are not involved. In many cases prompt action in extinguishing a small fire outside the city limits may prevent its increase and spread across the city line with disastrous results to the city and its taxpayers. The destruction by fire of a factory located outside the city limits may deprive resident taxpayers of means of livelihood and they and the city suffer loss thereby. Mutual assistance by neighboring cities may well work to the advantage of each. Perhaps in some cases the very good will acquired by assistance outside the city in emergency may be of

value to the city and its taxpayers. On the other hand, there are doubtless many cases where large districts refuse to become annexed to the city, and the burden of furnishing fire protection to such areas becomes an imposition on the city and its taxpayers, and discretion might well require refusal of fire service except where there is danger of the fire spreading across the city lines.

A similar issue was raised in connection with the purchase by the City of New York of land outside the city for use as a public park. The right to such action was challenged on the ground, among others, that it was beyond the authority of the city to purchase lands for a public park outside the corporate boundaries, and in *Matter Appl'n Mayor, etc., of N. Y.,* 99 N. Y. 569 (2 N.E. 642), the court said, inter alia, "It appears to be conceded, and has not been denied, that the acquisition and maintenance of public parks, securing pure air and healthful rest and recreation to the people, is a 'city purpose,' when executed within the corporate limits; and the sole contention is that it ceases to be a 'city purpose' when in any degree or to any extent it moves outside of those boundaries. * * * that test of a city purpose, which asks if the property bought and the money spent go outside of the corporate boundaries must be abandoned. It will not serve for a rule. * * * While, as was said in one of the cases cited, it is impossible to formulate a perfect definition of what is meant by a city purpose, yet two characteristics it must have. The purpose must be primarily the benefit, use or convenience of the city as distinguished from that of the public outside of it, although they may be incidentally benefited, and the work be of such a character as to show plainly the predominance of that purpose. And then the thing to be done must be within the ordinary range of municipal action." So we think the question here is not whether the actual service rendered by the fireman is within or without the city limits, but rather it is whether the predominant purpose is to benefit the city. In *Hansen v.*

*City of Havre,* 112 Mont. 207, 114 P. (2d) 1053, challenge was raised by a taxpayer as to the right of the city to assess property in a special improvement district within a city for improvements made without the city for control of flood waters, or for the purpose of paying for property without the city condemned for that purpose, and the court said: "The thing to be accomplished is improvement of conditions within the city and the improvement district. The fact that property must be acquired and the work performed outside the city is but incidental. The property to be benefited is not that outside the city but that within the city and within the improvement district."

Municipal police are usually employed, paid, controlled and discharged by the city, and the taxpayers might with equal justice, as in the case of firemen, demand that their activities be carried on exclusively within the city boundaries; but the legislature has given such officers authority to enforce certain statutes in prescribed areas outside the city limits and to pursue and arrest persons fleeing from justice in any part of the state. This may be of great value to people and property outside the city limits, but that is merely incidental to the main purpose of protecting the city from felons who might otherwise keep their rendezvous just over the city lines but carry on their activities within the city itself. Such powers are not possessed by firemen. However, in addition to the powers granted to the police by the legislature, it is a matter of common knowledge that, when a vicious crime is committed in a city or community, it is part of the regular work of the police of other cities, using city equipment and on city time, to go to the place of the crime, although without any authority to act there, for the purpose of assisting the local police in solving the crime and apprehending the criminal. While this assists the local police, its main purpose is, and must be, the protection of the city by which the visiting police are employed. Because of such extraterritorial activities,

statutes have been sustained providing for assessment upon all taxable property of the state for augmenting police pension funds. *Police Ass'n v. Warren,* 101 Colo. 586, 76 P. (2d) 94. Our legislature has similarly provided by statute for application of taxes on premiums collected from foreign fire insurance companies to a firemen's pension fund, and such laws have been held valid. *Wallace v. Childers,* 198 Okla. 604, 180 P. (2d) 1005. It would seem difficult to sustain them if the activities of fire departments were entirely restricted within the municipal limits.

While we have found no case involving precisely the question here raised, there are numerous cases in which the legality of extraterritorial service by a municipal fire department is recognized or assumed. See, Anno. 122 A.L.R. 1158. So in *Raynor v. City of Arcata,* 11 Cal. (2d) 113, 77 P. (2d) 1054, where the right of a fireman to be exempt from speed limits was challenged, the court said: "The fire chief was not acting outside the line of his duty because the fire was on the other side of the street which marked the city limits. He was under a duty to respond to the alarm whistle blown within the city. It was not shown that he was aware that the fire was beyond the city limits. Furthermore, protection of lives and property within the city required his presence at the scene of the fire and the extinguishing of a fire scarcely over the line."

In *Hubert v. Granzow,* 131 Minn. 361, 155 N.W. 204, where a similar question was raised in an action for negligence against members of a fire department, the court said: "It is probably true that no legal duty is imposed upon a city fire department to assist in extinguishing fires outside the city, but it is a matter of common knowledge that such departments almost invariably respond when called upon in such cases. Actuated by motives of humanity rather than by the mandate of strict legal duty, they seldom refuse to give their services to their neighbors in case of need. While

the law may not impose a legal duty upon them to assist in extinguishing fires outside the city, it certainly does not forbid them from doing so."

In *McCarthy v. Mason,* 132 Me. 347, 171 Atl. 256, the court quoted the above expression of the Minnesota case and said: "We concur. We see no good reason why such rights possessed by a fire department while acting within its home jurisdiction in the performance of its important and necessary service should not obtain as well when reasonably engaged in that kind of service outside its home limits. The needs are the same, whether the call comes from within or without the city."

*City of Burlington v. Industrial Commission,* 195 Wis. 536 (218 N.W. 816), was an action concerning the right to compensation of a volunteer fireman. The commission contended that the city had no power to pay an employee to assist in furnishing fire department service outside its limits. In Wisconsin all cities were then placed under a general charter law which no longer enumerated their powers, but gave a general grant of all powers permissible under the Constitution, except as otherwise specifically provided by the legislature. The fire department · had been accustomed to attend fires outside the city when directed by the chief, to the knowledge of the city authorities, and it was held, "that the city of Burlington was acting within its powers to promote its general welfare, peace, good order, and prosperity, and its common council was acting within its powers, in providing for fire service to adjacent farmers and citizens outside the city limits, under the clause 'for its commercial benefit' and in protecting its safety and welfare." The city of Pueblo is a charter city with equally broad powers.

In *Barclay-Westmoreland T. Co. v. Borough of Latrobe,* 131 Pa. Super. 513, 200 Atl. 271, an insurance carrier challenged the award of compensation to dependents of a fireman who was killed after responding to a fire alarm, and being sent to rescue some people marooned

by flood waters outside the city. No objection was made on the ground of his having been employed outside the city limits, and it was held that the fact that he was engaged in other work than fighting a fire was not material; that it is well known when disastrous floods have occurred members of the fire department rendered valuable service in rescuing persons in jeopardy; that this was expected of firemen, and that it was generally regarded as work incidental to their duties.

Finally, in exploring this question, we are persuaded that law must be more than isolated logic. It is but one of the segments of the social sciences, and to carry out its high purpose and best serve the welfare of the people its rules must aim toward the objective of better social relationships. The rule sought here and adopted by the trial court is niggardly and antisocial, contrary to long-recognized custom, and, in the long view, detrimental, as we think, to the city and its taxpayers. It savors of the attitude of prohibiting my children from sharing their toys in play with their neighbors, and of denial of the use of my garden hose to put out a neighbor's fire, which may well endanger my own home. The authority to declare policy as to the use of its fire forces and equipment lies with the city council. Unless and until such action is taken, decision thereon rests in the discretion of the officials of the fire department. The city council is answerable to the electors, if it abuses its discretion, not to the courts; and the officials of the fire department are answerable under proper rule or ordinance for carrying out the duties of their offices.

The judgment of the trial court is reversed, and the cause remanded with direction to dismiss the complaint.

MR. JUSTICE HAYS and MR. JUSTICE HOLLAND dissent.

MR. CHIEF JUSTICE HILLIARD does not participate.

MR. JUSTICE HAYS, dissenting.

The question which we are called upon to determine

is whether or not the City of Pueblo is authorized to exercise governmental functions beyond its corporate boundaries, or, restated, can it lawfully, in the absence of legislative authorization, send its fire equipment and personnel outside the city limits for the purpose of extinguishing fires?

The general rule, to which there are few, if any, exceptions, is stated in 62 C.J.S., page 283, section 141, as follows: "As a general rule the powers of a municipal corporation cease at municipal boundaries and cannot, without plain manifestation of legislative intention, be exercised beyond its limits, at least as far as governmental functions are concerned, even though it may have acquired property outside of its geographical limits. Within and subject to its constitutional limitations, the legislature, however, may, and often does, authorize the exercise of powers beyond municipal limits, and in accordance with the terms of the authorization, a municipal corporation may operate beyond its boundaries." This rule is followed in: *City of Detroit v. Oakland Circuit Judge,* 237 Mich. 446, 212 N.W. 207; *Light v. City of Danville,* 168 Va. 181, 190 S.E. 276, 285; *Miller v. Fowle,* 92 Cal. App. (2d) 409, 206 P. (2d) 1106, 1108.

In the opinion in the City of Detroit case, it was said:

" 'The general doctrine is clear that a municipal corporation cannot usually exercise its power beyond its own limits. If it has in any case authority to do so, the authority must be derived from some statute which expressly or impliedly permits it.' *City of Coldwater v. Tucker,* 36 Mich. 474."

"The writer is in full accord with as extensive grant as may be of the right of home rule, so-called, to cities. But such grant must obtain expression by legislative enactment or in the Constitution. There is no legislation conferring upon cities the right contended for here, and it is a far cry to urge that the permission given them by the Constitution to acquire parks within and without their corporate limits, *ipso facto,* and without any pre-

scribed procedure of any sort, gives them such permission by the exercise of the right of eminent domain."

In *Light v. City of Danville, supra,* the Supreme Court of Virginia, quoting from *Holmes v. Fayetteville,* 197 N. C. 740, stated the rule as follows: " 'The general rule is that a municipal corporation has no extraterritorial powers; but the rule is not without exceptions. The legislature has undoubted authority to confer upon cities and towns jurisdiction for sanitary and police purposes in territory contiguous to the corporation. * * * ' "

In *Miller v. Fowle, supra,* which was decided June 15, 1949, the California court said: "This question of power presents no legal difficulties. The two cities are incorporated under the Constitution and their respective charters with power to control and maintain public streets within their respective corporate limits. 'A municipal corporation has generally no extraterritorial powers of regulation. It may not exercise its governmental functions beyond its corporate boundaries.' "

In *City of Sedalia, ex rel. v. Shell Petroleum Corp.,* 81 F. (2d) 193, 106 A.L.R. 1327, the court said: "So far as governmental functions are concerned, it is elementary that a municipal corporation has no extraterritorial powers."

It likewise is true, as stated in 37 American Jurisprudence, section 122, page 736: "The primary purpose of a municipal corporation is to contribute toward the welfare, health, happiness, and public interest of the inhabitants of such corporation, and not to further the interests of those residing outside its limits; therefore, the general rule is that municipal corporations have no extraterritorial powers, but their jurisdiction ends at the municipal boundaries and cannot, without specific legislative authority, extend beyond their geographical limits."

In the present case, the trial court found, inter alia: "For years it has been the practice of the city's fire department to respond to fire calls, going sometimes as

far as three or more miles beyond the city limits, and furnish fire protection to the outlying districts. No arrangements have ever been made nor has any contract been entered into between the city and these outlying districts or any representative thereof to furnish fire protection to any property located in territory beyond the limits of the municipality. All such fire protection furnished property beyond and outside of the city limits has been furnished gratuitously by the city. Witness Fitzpatrick, chief of the city fire department, testified that some of the larger businesses located outside of the city limits, which have received protection and help from the city fire department have contributed to or tipped quite generously the Pueblo Firemen's Pension Fund, but that nothing has ever been paid the city for the use of its fire equipment or for the services of its firemen."

As a result of the illegal practice of going out of the city limits to extinguish fires at the expense of the taxpayers of Pueblo, the city council adopted a resolution, which provides: "That on and after June 1st, 1947, that the service of the fire department shall be confined to territory within the city limits, and, the commissioner of public safety in charge of the fire department, be and he is, hereby directed to act accordingly." The above resolution is still in force and effect, but seems to have been ignored and disregarded, as is shown by the following excerpts from the trial court's findings:

"Witness Rickords, Commissioner of Public Safety, and who as such has supervision of the fire department, testified that at present the Pueblo fire equipment and number of firemen employed by the department are insufficient to care for the present needs of the city itself; that he has asked for an increased appropriation for 1949 amounting to approximately one-fourth more than the appropriation the department received for 1948; that he has issued no orders nor given any instructions to the Chief of the Fire Department to be followed in case

of fires beyond or outside the city limits, but has left the matter of answering or refusing to answer such calls to the discretion or judgment of the Chief of the Fire Department.

"The fire chief testified that his department responds to most of the calls for help received from districts lying outside of the city limits but not all—depending upon various things, including weather conditions, the wind, proximity of the fire to the city, availability of the equipment, etc."

The following observation of the trial court in its "Conclusions of Law" seems to me to be unanswerable: "Members of the city council and officers in charge of the city's fire department are representatives and servants of the people who reside within and pay the expenses of the municipality. The fire department is purchased and the firemen are paid by the taxpayers of the city whose welfare and interests the members of the council and city employees are employed to protect. One can hardly contend, consistently at least, that the fire chief or city council can take money from the fire department's budget, however humanitarian it may be, and give it to an outlying district for the purpose of purchasing fire equipment as badly as such equipment may be needed by the district. The Court fails to see wherein these officers have any more of a legal right to take the city's fire equipment purchased by funds from the fire department's budget and give that equipment or donate its use to territory beyond the city limits, than they have to take the money itself from the department's budget." Certainly the misuse by public officials of city property is just as illegal as the misuse of money which we condemned in *McNichols v. Denver*, 120 Colo. 380, 209 P. (2d) 910.

We are presented with a shocking situation. According to the Commissioner of Safety the "Pueblo fire equipment and number of firemen employed by the department are insufficient to care for the present needs

of the city itself." As stated by the same commissioner, the department needed "an increased appropriation for 1949 amounting to approximately one-fourth more than the appropriation the department received for 1948."; the city council by reason of the shortage of equipment and manpower, by resolution in terms prohibited the use of such equipment and firemen outside the city boundaries in order that such equipment and firemen could at all times be ready for the extinguishment of fires within the city.

Regardless of the foregoing, and also of the fact that there is no statute regulating the use of fire equipment, or defining the power, duties and responsibilities of a city in performing its governmental activities beyond its corporate limits, this court now vests chiefs of fire departments with the absolute and uncontrolled discretion to say when and under what circumstances such equipment and such firemen shall be used to extinguish fires outside of the limits of a city.

Owners of property situate outside of the city may lawfully provide for fire protection for themselves and their property without relying upon the gratuitous services of a city, the facilities of which are wholly insufficient to care for the needs of its own inhabitants. They may, for instance, create a fire protection district pursuant to the provisions of existing laws, or may avail themselves of the provisions of the annexation laws, and thus secure ample fire protection for themselves and their property.

MR. JUSTICE HOLLAND concurs in this dissenting opinion.