HOMER C. MITTELSTADT, Corporation Counsel, Eau Claire County *Page 85 
You have requested my opinion on certain questions relating to contracts for fire protection, insurance coverage for reimbursement for fire losses and liability for fire protection services in connection with the Eau Claire County Hospital, located in the Town of Union, Eau Claire County.
You advise that about 1955, the Board of Trustees of the Eau Claire County Hospital entered into a written agreement with the City of Eau Claire whereby the city agreed that it would provide fire protection to the County Hospital at an agreed upon rate of compensation. Eau Claire County apparently has elected to insure its property against fire under the State Insurance Fund as authorized by sec. 210.04 (1), Wis. Stats. This insurance includes a policy covering the Eau Claire County Hospital, which contains a provision which would cover certain liability, assumed by contract or agreement, for fire department charges made by a city responding to a fire call where the property involved is not located within the limits of such city. Although the Town of Union apparently does maintain a fire department, the additional fire protection available from the City of Eau Claire was apparently felt necessary because it was felt the town fire protection was not adequate to protect the institution. Finally, you indicate that in 1971 incidental fire calls to the County Hospital as well as a major fire requiring extensive fire-fighting services from the Eau Claire Fire Department resulted in a billing to the County Hospital of approximately $9,000. The insurance coverage provided by the State Insurance Fund for the Eau Claire County Hospital for 1971 includes fire call insurance to the limits of $1,800.
Based on the foregoing facts, you inquire as follows:
"1. May the Eau Claire County Hospital contract for fire protection service with the City of Eau Claire? This question presumes that the Town of Union is not made a party to the agreement."
This question should really be considered in two parts. First, what is the legal authority of the City of Eau Claire to contract to provide fire protection services outside of its municipal boundaries? Secondly, what legal authority does the Board of Trustees for the Eau Claire County Hospital have to obligate the county to pay for future fire protection services, from municipalities other than the *Page 86 
town in which the county facility is located, based on the board's judgment that the fire protection services provided by the town are inadequate?
As a preliminary matter, I should first point out that sec. 60.29, Wis. Stats., sets forth the powers which a town board "is empowered and required" to exercise. Subsections (18) and (20) of sec. 60.29, Stats., provide an almost infinite variety of arrangements by which a town may provide fire protection for property located therein. These arrangements include the creation of a fire department for the town or a part thereof, a joint fire department, agreements between a town and a firemen's association to provide fire protection for the town, agreements between various governmental entities for providing for the establishment and maintenance of a joint volunteer fire department, etc. These statutes generally provide that the towns involved are initially responsible for the cost of adequate fire protection, though such costs may normally be reimbursed by taxation. In addition, sec. 60.29 (18m), Stats., provides that a town is liable for services of any fire department requested to fight fire in the town where it has failed to provide for a fire department and fire-fighting apparatus and equipment for extinguishing fires in the town. This provision of the law is apparently not involved here, inasmuch as it appears that the Town of Union does provide fire-fighting services, and the above-described contract is apparently utilized to augment and supplement fire protection to the County Hospital.
In light of the fact that the above provisions of sec. 60.29, Stats., provide a number of instances where the statutes specifically authorize towns to contract with cities or villages for fire protection services, it may be argued that such statutes establish limitations on the extent to which cities may contract to provide fire-fighting services outside of their municipal boundaries. However, this would not appear to be a completely accurate conclusion. It would certainly appear appropriate, for instance, for municipalities to enter into mutual aid fire protection pacts, under the intergovernmental cooperation provisions of sec. 66.30 (2), Stats. Also, it is noted that sec.59.07 (11), Stats., authorizes the county board to join with municipalities in cooperative arrangements as provided by sec. 66.30, Stats. However, even though sec. 59.07 (36), Stats., authorizes counties to establish fire departments, such a mutual *Page 87 
assistance pact, under sec. 66.30, Stats., is not indicated by the fact situation you pose. Likewise, although it can hardly be doubted that a county may take whatever reasonable steps it feels appropriate to augment the fire protection services provided by the municipality in which its institutions are located, the service which it contracts to receive must be one which at the same time the performing municipality is entitled to render. 48 OAG 231 (1959).
A general statement of the authority of municipalities to provide fire-fighting assistance beyond their corporate limits is set forth in 16 McQuillin, Municipal Corporations (1972 Revised Volume), § 45.05a, at 579, as follows.
"Operation of the municipal fire department is a governmental function which, without express statutory or charter authorization, may not be conducted extraterritorially. While a municipality has power to procure fire protection from an outside source, its contract to furnish fire protection beyond its own limits has been held void because ultra vires. There may be implied municipal power, however, to respond to occasional outside alarms, when in the discretion of the council such action subserves the municipal welfare."
It may be that our Wisconsin Supreme Court would hold that a municipality may provide fire protection service to a governmental institution with a highly concentrated population, such as a hospital, which, although not located within the municipality, lies in the proximity of the boundaries of such municipality. Support for such a conclusion might rest in part on a showing that the existence of the institution affects the economic well-being of the municipality, that many residents of the municipality are employed and housed at such institution, and that the rendition of such service otherwise contributes to the safety and welfare of the city. Legal support for such a position is found in City of Pueblo v. Flanders (1950), 122 Colo. 571,225 P.2d 832, which quotes a Wisconsin case for the proposition that city officers, in their discretion, may authorize the use of a city's fire equipment and firemen for the purpose of extinguishment of fires in territory and districts outside the corporate limits of the city. In the Pueblo case, at 225 P.2d 836, the following is stated: *Page 88 
"City of Burlington v. Industrial Commission, 195 Wis. 536,218 N.W. 816, 817, was an action concerning the right to compensation of a volunteer fireman. The commission contended that the city had no power to pay an employee to assist in furnishing fire department service outside its limits. In Wisconsin all cities were then placed under a general charter law which no longer enumerated their powers, but gave a general grant of all powers permissible under the Constitution, except as otherwise specifically provided by the legislature. The fire department had been accustomed to attend fires outside the city when directed by the chief, to the knowledge of the city authorities, and it was held, `that the city of Burlington was acting within its powers to promote its general welfare, peace, good order, and prosperity, and its common council was acting within its powers, in providing for fire service to adjacent farmers and citizens outside the city limits, under the clause, "for its commercial benefit," and in protecting its safety and welfare.' The city of Pueblo is a charter city with equally broad powers."
Assuming that our Supreme Court would apply the reasoning set forth in the Burlington case to the contract situation you describe, the question still remains as to the legal authority of the Board of Trustees to contract with the city.
Section 59.07 (1) places broad power in the county board to acquire, control, maintain and operate county property. Likewise, sec. 59.07 (2) (b), Stats., indicates that the county board has the power to "Provide fire and casualty insurance for all county property." Finally, sec. 59.07 (5), Stats., provides that the county board shall represent the county and have the management
of the business and concerns of the county in cases where noother provision is made. In the latter regard, sec. 46.18 (1), Stats., provides that the county hospital shall be managed by a board of trustees, appointed by ballot of the county board, and subject to regulations approved by the county board. Under sec.46.18 (11), Stats., the county board provides annual appropriations for the operation and maintenance of the hospital. Finally, I note that sec. 46.18 (6), Stats., authorizes the trustees to sue and defend in the name of the county any cause for action involving the interest of said institution. *Page 89 
The foregoing statutes leave a rather ambiguous picture as to the relationship between the county board and the Board of Trustees when it comes to the execution of a contract such as you describe. Had the county board executed such contract or had the county board directed the Board of Trustees to enter into such an agreement, the situation would have been more easily resolved. As pointed out in 46 OAG 9 at 11:
"What may be included in management is difficult of precise definition. As pointed out in 39 O.A.G. 330, the management is subject to regulation in any event. It was there recognized, however, that in absence of specific action by the county board, the normal procedure for repair of buildings `would be for the county board to make the appropriation and the trustees to make the expenditure.' See, also, 21 O.A.G. 919, 20 O.A.G. 130 and 12 O.A.G. 26. Similarly, it was indicated in 3 O.A.G. 448 that after the county board fixed the amount of insurance to be purchased on institutional property, it might delegate to the trustees authority to make the purchase."
However, regardless of the status of the Board of Trustees to enter into the subject contract with the city in the first instance, I suspect that there are many facts not related in your letter which would have a bearing on the enforcibility of the contract nevertheless. For instance, it is quite possible that the county board was fully aware of the actions of the Board of Trustees in entering into the contract herein and that it has fully acquiesced therein. I suspect it could be shown that the county board was aware that it was authorizing the appropriation of funds for the payment of services under the fire protection agreement.
Based on the foregoing, I conclude that it is arguable that the City of Eau Claire and the Board of Trustees of the Eau Claire County Hospital may contract for fire protection service for said hospital. However, even if such contract is subject to question because executed by the Board of Trustees instead of the county board, the county board may have effectively ratified the fire protection agreement by a consistent practice of appropriating funds for such fire protection service for a period exceeding 15 years to the present.
You next inquire as follows: *Page 90 
"2. May the Eau Claire County Hospital enter into a contractural arrangement with the State Insurance Fund to provide insurance coverage to reimburse the County Hospital for the fire protection provided by agreement with the City of Eau Claire?"
As pointed out in my response to your first question, sec.59.07 (2) (b), Stats., states that the county board shall provide fire insurance for all county property. Therefore, changes in the contractual arrangement between Eau Claire County and the state as to insurance on county buildings, other than those arrangements which are automatically required by statute or ministerial in nature, should be made directly by the county board, unless the board has taken some action which indicates that the Board of Trustees is to act as its agent in this regard.
You next inquire as follows:
"3. Understanding that all fire calls are made directly from the Eau Claire County Hospital to the Fire Department, can the Town of Union be made liable for any fire protection expenses between the City of Eau Claire and the County Hospital that are not covered by the State Insurance Fund?"
The Town of Union apparently has made no contract with any other city, village, town, voluntary or other fire-fighting organization to provide fire protection service within its boundaries. It is also my understanding that the town does in fact maintain a fire department and fire-fighting apparatus and equipment for extinguishing fires within the town. Under those circumstances, I am unaware of any basis on which the Town of Union can be made liable for any fire protection expenses arising under the agreement involving the City of Eau Claire and the County Hospital, whether or not those costs may be covered by the State Insurance Fund.
Finally, you inquire as follows:
"4. In the event that the Town of Union provides fire protection services to the Eau Claire County Hospital are they able to tax the real and personal property of the Eau Claire County Hospital to pay for these services?"
Although sec. 60.29 contains certain provisions which would authorize a town to levy a tax upon real and personal property for *Page 91 
the purpose of reimbursing the town for the cost of fire protection, a county hospital would be exempt from general property taxes, under the provisions of sec. 70.11 (2), Stats. Although there are other sections in Chapter 70 which impose special taxes upon real estate otherwise exempt because of its public status, I find no statute which would impose a special tax upon a county hospital to pay for fire protection services. It is, therefore, my opinion that the Town of Union could not tax the real and personal property of the Eau Claire County Hospital to pay for fire protection services it provides to the hospital.
RWW:JCM