Marvin L. MILLER, Appellant,

v.

CITY OF ST. JOSEPH, Missouri, a Municipal corp., Respondent.

No. 25930.

Missouri Court of Appeals, Kansas City District.

Sept. 7, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 1972.

Application to Transfer Denied Nov. 13, 1972.

Charles C. Shafer, Jr., and Howard Chamberlin, Kansas City, for appellant.

Ronald E. Taylor and Thomas R. Summers, St. Joseph, for respondent.

PRITCHARD, Judge.

The issue is whether the City of St. Joseph, Missouri, may validly enter into an understanding, oral in nature, with industrial and residential groups for fire prevention and protection in those areas beyond the city limits.

Plaintiff is a resident voter and taxpayer of the City and is employed by it in its fire department. In his petition for injunction he prays that the City be restrained from fighting fires or handling any other emergencies beyond its limits which he says is in violation of Section 5.7 of its charter: "The Fire Department shall be responsible for the protection of life and property *within* the City of St. Joseph, Missouri from fire * * *." (Emphasis added.) Plaintiff further pleads that he and other fire department employees, over their remonstrance, have been required to go beyond the city limits to fight fires or handle other emergencies, or on refusal to do so they will lose their positions with the City; that such results in a loss of insurance protection; it could result in lawsuits being filed against him individually; and the City could be liable as a result of loss of its immunity, which could further result in greater taxes against plaintiff. Judgment was for respondent City in the trial court.

The essence of the City's answer and its position here is that the fighting of fires along the perimeter of the City, although outside the city limits, is necessary and expedient to promote and maintain the comfort, safety, welfare, commerce and industry of the City and its inhabitants. It derives the defense from Section 2.13(20) of its charter: "POWERS (20) Do all things whatsoever necessary or expedient for promoting and maintaining the comfort, education, morals, safety, peace, government, health, welfare, trade, commerce, or industry of the City and its inhabitants."

The City filed a motion to dismiss this appeal upon the ground that the adoption of an amendment to the Constitution of Missouri, Art. VI, Section 19(a), V.A. M.S., on October 5, 1971, rendered the prior decision of the court below moot. The constitutional amendment is: "Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the Constitution of this State and are not limited or denied either by the charter as adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law." Plaintiff's position is that the adoption of this constitutional amendment does not render this case moot because the City has not by further action enacted any charter provision authorizing it to fight fires beyond its limits. He still claims that such is in violation of Section 5.7 above. The issue is still whether under present charter provisions the city may fight fires and handle other emergencies beyond its corporate boundaries, and that issue, as plaintiff contends, has not been rendered moot by the broadened provisions of the above constitutional amendment. The City's motion to dismiss this appeal is overruled.

Plaintiff had been a first-class fire fighter of the City for about 14 years, and was President of Local 77 of Fire Fighters International, Fire Fighters Association, representing about 145 members. He was assigned to the Tenth and Corby, Company No. 7. Eight years ago he made a complaint to the news media and the City Council as to being ordered to go outside the city limits, " * * * I felt that we were jeopardizing not only the men but the equipment and the taxpayers." In summary, the reasons for plaintiff's fear of going outside the city limits are these: (1) the welfare of his men "towards liability risk, knowing that we don't have the protection that we have within the corporate limits";

(2) the taxpayers are the ones paying fire-fighter salaries and should be protected. It was further plaintiff's position that in going outside the city limits to fight a fire, the citizens of the City were left without protection. He, himself, was fearful of personal liability because of loss of possible governmental immunity. The average number of calls outside the city limits had been 40 or 50 per year. The arrangement between the City and the stockyards district, which lies to the southwest of the city limits, is that of a gift of $17,500.00, according to plaintiff's understanding, and the outlying residential districts pay $50.00 per hour per call to the City from a "pot" made up by residents.

For the City, its Mayor, W. J. Bennett, testified that the total budget of the City was a little over 7 million dollars, the real estate in its limits was assessed at $75,675,430.00, and the personal property had an assessed valuation of $37,342,680.00. The stockyards area has a total assessed valuation of $3,596,480.00, which, if it were all within the city limits, would bring in right around $75,000.00 in taxes, which would not all be used for fire protection if the area were in the city. The City would have other obligations such as streets, lights, police and fire protection, and snow removal. In addition to the annual payment to the City, each industry within the stockyards district which has a fire call makes a contribution to the Firemen's Pension Fund of $50.00. There is no written contract between the City and the stockyards association whereby it pays for fire protection to the City. There is a contribution of $17,500.00 per annum in advance. The type of buildings in the stockyards district is industrial, the newer ones being made of concrete, but the older ones, Swift and Armour, are wooden and brick. Fire protection is also provided areas to the east and northeast of the City—Deer Park, Hurst, East Hills, a few on East Stonecrest, Mynor Manor north and south, and the Maxwell Height area north of the Industrial City area.

Don Spaulding, Division President of the United Stockyards Corporation, which has 10 stockyards located in various cities, testified that the stockyards are located immediately adjacent to the railroad tracks which are the city limits line, and a part of the property is located on Illinois Avenue on Highway 59 within the city limits. The procedure of furnishing fire protection to the stockyards area has been followed back before the turn of the century. Many of the plants and industries outside the city do have in-plant fire fighting equipment, but none to cover an area, tall buildings or major fires. The $17,500.00 paid in advance, involving 25 businesses or industries, was not done pursuant to a written contract or memorandum, but there was a receipt from the city treasurer showing for what it was. Approximately 20 to 25 per cent of the city industrial payroll is made up by employees of the stockyards operations—as much as 29 million dollars a year, about 5,000 employees, a majority of whom live in the City, own property there and pay taxes.

On cross-examination, Mr. Spaulding testified that the assessed valuation of the stockyards property outside the City is about $750,000.00. The stockyards area covers about 100 acres of land, and the other 25 businesses would involve around 400 to 500 acres. On re-direct examination, Mr. Spaulding testified that generally the business buildings in the association would vary from very high combustible facilities such as the stockyards which are made of wood, and contain highly combustible hay and feed adjacent to the city limits, to masonry and concrete.

Mrs. Zelda Guy is secretary-treasurer of the Vineyard Construction Company which has interests in four subdivisions outside of the city limits, having built and developed them. The first subdivision is Leonard Acres, on the eastern edge of the city limits, in which the closest house is within 50 feet of Leonard Road, that being the boundary of the city. Deer Valley is adjacent to Leonard Road Acres. Vineyard also has Deer Park and Deer Park East. Mrs. Guy estimated the assessed valuation of the four subdivisions at $1,250,000.00. There are approximately 650 houses in the four areas, most being frame houses with aluminum siding and composition roofs. About 3,150 people live there and most are employed in the City, which is presently providing fire protection for the four areas. Vineyard or the Home Associations, which are made up of the subdivisions, pay the City $50.00 per hour for each fire department call. On the Monday before trial, a petition for the formation of a fire protection district was filed in circuit court.

█ The evidence here is clear that in its arrangements with the Stockyards Association, and with the residents of the four residential areas, the City is operating under its power as contained in Section 2.-13(20), supra, of its charter. The highly combustible nature of the construction of the stockyards facilities constitutes a threat in the spread of fire to buildings within the city limits, which immediately adjoins those facilities. It is the safety, health, welfare, trade, commerce or industry of the City and its inhabitants which are sought to be protected by the informal arrangements which the City now has and which it has had in the past with persons and associations outside its boundaries. Not only do the arrangements tend to protect against the disaster of fire, but since residents of the City are employed in the industrial areas, as the evidence shows, their economic interests and those of the City are preserved by insuring that such industrial areas and businesses are protected from destruction. The economic loss to persons who are employed within the City but who reside in those four areas outside its limits, is also a factor to be considered. That economic loss has a direct relation to and subserves the welfare of the City and its inhabitants. The public interest and welfare of the municipality and the taxpayers therein in permitting the City's fire department voluntarily to accept calls for

the extinguishment of fire outside its corporate limits were considered in City of Pueblo v. Flanders, 122 Colo. 571, 225 P.2d 832, 835, "In many cases prompt action in extinguishing a small fire outside the city limits may prevent its increase and spread across the city line with disastrous results to the city and its taxpayers. The destruction by fire of a factory located outside the city limits may deprive resident taxpayers of means of livelihood and they and the city suffer loss thereby." See also the cases announcing this rule cited at page 836 of the City of Pueblo case, and note that it is there said that the city of Pueblo is a charter city [as is the City of St. Joseph] with broad powers equal to those referred to in the there cited and quoted case of City of Burlington v. Industrial Commission, 195 Wis. 536, 218 N.W. 816, 817. The case of Jefferson County Fiscal Court v. Jefferson County ex rel. Grauman, 278 Ky. 785, 129 S.W.2d 554, 122 A.L.R. 1151, referred to in McQuillin, Municipal Corporations, 1972 Revised Volume, Section 45.-05a, p. 579, did not involve any issue of the welfare of a municipality or its inhabitants, but only the issue of whether a contract to furnish fire protection beyond the limits of the City of Louisville was ultra vires. It is thus distinguishable from this case, and also distinguishable are those cases holding generally that a municipality is not authorized to extend public services (such as water and electricity) beyond its corporate limits. Annotations, 49 A.L.R. 1230; 98 A.L.R. 1001. Plaintiff's contention that the City of St. Joseph is not authorized to furnish fire protection beyond its corporate limits is rejected.

█ The second thrust which plaintiff makes is that the arrangements which the City has with the persons outside the City for fire protection are not in writing as required by Section 432.070, RSMo.1969, V. A.M.S., and thus is void. The argument presupposes that the "arrangement" is a contract. If it were a contract, with mutual promises and consideration, it would have to be in writing under the statute to be enforceable against the City. Kansas City v. Rathford, 353 Mo. 1130, 186 S.W. 2d 570, 574[5–8]; Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 878[1], 179 S.W.2d 108. Section 432.070 is intended for the protection of the City, City of Weston v. Bank of Greene County, Mo. App., 192 S.W. 126, 128, and because of the requirement of the statute that "contracts" of municipalities must be in writing, undoubtedly neither the Stockyards Association nor the residents of the four subdivisions and other persons could maintain an action against the City for failure to provide fire protection beyond its limits.

█ Even assuming that there was a valid basis for holding that the City exceeded its charter powers in extending fire protection beyond its boundaries to the associations and persons immediately adjacent to it, yet plaintiff has not sustained his burden of proof so as to be entitled to injunctive relief. That burden encompasses a showing of substantial injury to himself and others similarly situated. There has been no proof that plaintiff will lose any insurance protection; that there could be [successful] lawsuits filed against him individually; or that the City could be liable as a result of loss of its immunity, which could result in greater taxes against plaintiff. Importantly, there was no proof that the City's activities in responding to 40 or 50 calls per annum caused it to incur expenses in excess of its receipts of payments under its informal arrangements for fire protection outside its boundaries, so as to constitute an illegal expenditure of public money. No issue is presented as to the authority of the City under its charter to provide fire protection to other areas beyond those now protected and which may not be contiguous.

Upon this record the great and overriding public concern of persons within the City of St. Joseph, and the City itself, is in protecting their economic and safety interests from being impaired by the disaster of

fire. Plaintiff has produced no evidence of substantial harm to himself, nor has he made a convincing argument, as would outweigh that public concern.

The judgment is affirmed.

All concur.