Dear Representative Ward:
This opinion is in response to your questions asking:
 (1) May a third class city furnish fire protection outside the city limits, and if so, to whom?
 (2) Can cities enter into mutual aid agreements with fire service organizations that are not statutory fire districts or incorporated cities, such as voluntary fire service organizations?
Your opinion request indicates that you are concerned with the City of Farmington; the City of Farmington is a third class city with the mayor-council form of government.
The controversy appears to involve the validity of Farmington City Code Section 29-125, which states:
 For all persons who are being furnished water by the city and living outside the city limits, the city shall furnish all the usual and available fire protection therefor without the usual described fees paid by non-residents of the city. However, the priorities for the use of the city fire equipment and crews shall remain the same with top priority for fire protection to be given to the residents of the city.[1]
This ordinance provides residents of the City of Farmington priority in fire services. Apparently, the City Council of Farmington has arrived at the "priority service" provision as a way of allocating the City's limited fire protection services. We assume that such a limitation is valid.
I. Extraterritorial Fire Protection Services
 A. Constitutional Charter Cities
In Miller v. City of St. Joseph, 485 S.W.2d 688 (Mo.App. 1972), the issue was whether the City of St. Joseph had the authority to enter into oral understandings to provide fire protection services to the Stockyards Association and residents of four residential areas, all of which were located outside the city limits. The City of St. Joseph is a constitutional charter city operating under Article VI, Section 19(a), Missouri Constitution (as adopted October 5, 1971), which states:
 Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.
Such powers are sometimes referred to as "residual powers"; meaning, constitutional charter cities have all residual powers not prohibited to them. Section 5.7 of the Charter of the City of St. Joseph required the city to provide fire protection services within the City of St. Joseph. Section 2.13(20) of the Charter of the City of St. Joseph provided that the City had the power to "[d]o all things whatsoever necessary or expedient for promoting and maintaining the comfort, education, morals, safety, peace, government, health, welfare, trade, commerce, or industry of the City and its inhabitants."485 S.W.2d at 689.
Testimony at the trial showed that the City had an oral understanding to provide fire protection services to the members of the Stockyards Association. The Stockyards Association made an advance annual contribution of seventeen thousand five hundred dollars ($17,500.00), and members of the Stockyards Association agreed to pay fifty dollars ($50.00) per fire call into the Firemen's Pension Fund. Testimony also showed that the City agreed to provide fire protection services to four residential subdivisions outside the City containing approximately six hundred and fifty (650) houses; the subdivision construction contractor or the home associations were to pay the City fifty dollars ($50.00) per hour for each fire call.
The court noted that the combustible nature of the stockyards' facilities constituted a threat of the spread of fire to buildings within the city limits, but immediately adjoining the stockyards; that if the stockyards burned, many inhabitants of the City would be unemployed; and that many of the people who reside in the four residential areas are employed in the City, and the economic loss by fire to such people would affect the City. Accordingly, the court concluded that the City had the authority under Section 2.13 (20) of the City Charter to protect the safety, health, welfare, and commerce of the City by providing extraterritorial municipal fire protection services.
B. Statutory Class Cities
In contradistinction to the residual powers approach applicable to constitutional charter cities, third class cities with the mayor-council form of government are governed by the "Dillon" rule, named after Judge Dillon, who wrote a treatise on municipal corporations.
The Dillon rule is municipal corporations possess only those powers expressly granted to them, those powers implied in or incidental to those expressly granted them, and those powers essential to the municipality. Any reasonable doubt as to whether a power has been delegated to a municipality is resolved in favor of non-delegation.Anderson v. City of Olivette, 518 S.W.2d 34, 39 (Mo. 1975); State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816,74 S.W.2d 363, 364 (Banc 1934) (quoting, 1 Dillon on Municipal Corporations, § 89 (3rd Ed.)). Extraterritorial powers must be expressly granted in clear and unmistakable language. See Taylor v. Dimmitt,336 Mo. 330, 78 S.W.2d 841 (1934); Missouri Public Service Co. v.City of Trenton, 509 S.W.2d 770 (Mo.App. 1974). The general rule is that extraterritorial fire protection services are ultra vires. 16 E. McQuillin, The Law of Municipal Corporations, Section 45.05a (3rd Ed. S. Flanagan 1984).
Section 77.260, RSMo 1978, states:
 The mayor and council of each city governed by this chapter shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this state, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same. [Emphasis added.]
The above emphasized portion of this statute contains a "general welfare" clause (the "expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants" language) and a "residual powers" provision (the "all ordinances not repugnant to the constitution and laws of this state" language).
The courts have held that "general welfare" provisions may not be used as authority for the exercise of police powers not covered by a specific grant of power. Anderson v. City of Olivette,518 S.W.2d 34, 37-38 (Mo. 1975); Tietjens v. City of St. Louis,359 Mo. 439,222 S.W.2d 70, 73 (Banc 1949). However, we find no interpretation of the "residual powers" provision in Section 77.260, RSMo 1978.
The "residual powers" provisions of Article VI, Section 19(a), Missouri Constitution, and Section 77.260, RSMo 1978, contain very similar language. We believe that the reasoning of the Miller case applies to third class cities with the mayor-council form of government, under the "residual powers" language found in Section 77.260, RSMo 1978, and that such cities may provide extraterritorial fire protection services, so long as the safety, health, welfare, property, or commerce of the inhabitants are benefited thereby. The provision of such services, as provided by Farmington City Code Section 29-125, is not prohibited or repugnant to the Constitution and laws of this state.
We do note that Article VI, Sections 23 and 25, Missouri Constitution, prohibit the granting of free fire protection services to private entities. Accordingly, the provision of free extraterritorial fire protection services by a city is generally repugnant to the Constitution of Missouri. However, if the fire protection provided is primarily for a public purpose, then this constitutional prohibition is not applicable. See, e.g., State ex rel. Jardon v.Industrial Development Authority of Jasper County, 570 S.W.2d 666
(Mo.Banc 1978). If the provision of the fire protection services is primarily for the benefit of the landowner or resident of the property affected by the fire, then such services may not be granted free-of-charge. Such services would have to be provided by an oral contract, see Miller, 485 S.W.2d at 692 (oral city contracts are not enforceable against city but are not void per se), or a written contract,see Section 432.070, RSMo 1978. Such contractual charges are voluntary, and such charges do not need to be approved by the voters under the Hancock Amendment, Article X, Section 22(a), Missouri Constitution.See Pace v. City of Hannibal, No. 65725 (Mo.Banc 1984); Opinion No. 122, Leffler, 1982. Accordingly, the "no fees" provision of Farmington City Code Section 29-125 is constitutional only if the fire protection provided is for a public purpose, such as, to save the City of Farmington and its inhabitants from the spread of fire.
 II. Mutual Aid Agreements With Voluntary Fire Service Organizations For Extraterritorial Fire Protection Services
Section 77.190, RSMo 1978, inter alia, authorizes third class cities with the council-mayor form of government to organize fire companies and pay the same for services provided; however, this statute does not authorize the operation of such fire companies outside the corporate boundaries of the city.
Sections 71.370 to 71.390, RSMo 1978, appear to authorize mutual aid agreements for extraterritorial fire protection services between cities. This statute does not authorize mutual aid agreements for extraterritorial fire protection services with private voluntary fire service organizations.
Article VI, Section 16, Missouri Constitution, and Section70.220, RSMo 1978, authorize municipalities to contract with private entities for the planning, development, construction, acquisition, or operation of any public improvement or facility, or for acommon service.
Section 432.070, RSMo 1978, states:
 No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.
In light of our conclusion above that Section 77.260, RSMo 1978, and the Miller case authorize third class cities with the mayor-council form of government to provide extraterritorial fire protection service, so long as the inhabitants of the city are benefited thereby, we believe that such extraterritorial services are within the scope of the city's powers and are a common service also provided by voluntary fire service organizations. Therefore, mutual aid agreements for extraterritorial fire protection services between third class cities with the mayor-council form of government and voluntary fire service organizations are authorized byMiller v. City of St. Joseph, 485 S.W.2d 688 (Mo.App. 1972); and Sections 70.220, 77.260 and 432.070, RSMo 1978.
We view the application of this opinion to be very limited. Cities are only allowed to provide extraterritorial fire protection services in order to "protect themselves". Accordingly, we do not view this opinion as authorizing the provision of extraterritorial fire protection services by cities, with or without mutual aid agreements, at distances far from the boundaries of the city.
CONCLUSION
It is the opinion of this office that:
(1) Third class cities under the mayor-council form of government pursuant to Chapter 77, RSMo 1978 and RSMo Supp. 1984, may provide fire protection services outside the city limits, so long as the safety, health, welfare, property, or commerce of the inhabitants of the city are benefited thereby; and
(2) Such cities may enter into mutual aid agreements with "voluntary" fire service organizations, so long as the safety, health, welfare, property, or commerce of the inhabitants of the city are benefited thereby.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] We do not opine on the propriety of the City of Farmington exercising extraterritorial water service powers. See, e.g., MissouriCities Water Company v. City of St. Peters, 534 S.W.2d 38 (Mo. 1976) (construing Section 250.190, RSMo 1969, and concluding that extraterritorial water service is authorized under such statute).